## Decker v. Palmer et al.

Feb. 16, 1940.

Chas. H. Wilson, Judge.

Raymond B. Dycus, J. R. Wells and H. Pate Wells for appellant.
Charles Ferguson for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing in part and affirming in part.

The appellant, G. E. Decker, and the appellee, Will Palmer, in January, 1936, formed a partnership for the operation of a farm. The appellant was the owner of a considerable amount of live stock and feed and the appellee owned a smaller amount. Appellant was to own a two-thirds interest in the partnership and to receive two-thirds of the crops and sales of live stock—appellee was to own and receive one-third. To make matters even between them appellant purchased a two-thirds interest in the property owned by appellee going into the partnership and appellee purchasd a one-third interest in property put into the partnership by appellant. They figured the value of property put into the partnership by each and it was agreed between them that appellee owed appellant $1,135.35, for which appellee executed his note to appellant. Appellant moved to the farm and during a part of the time the partnership was in existence appellant resided with appellee—appellant says about 90 days, appellee says about 15 months.

The partnership did considerable trading, raising crops and buying and selling of live stock. The partnership had no bank account and each party did some of the buying and some of the selling. Money was borrowed from the bank by the partnership from time to time. When sales would be made the notes would be paid off

at the bank and the partners settled with each other after each transaction. No books were kept for the reason that settlements were made from time to time and after each sale of stock or crops made by either of the partners.

On July 5, 1937, appellant and appellee had a meeting to effect a settlement of the partnership affairs up to that time, at which meeting the appellee, Ernest Palmer, son of Will Palmer, was present. It was determined at that time that appellee was indebted to appellant in the settlement of the partnership affairs to the extent of $156.50 and appellee executed his note for that sum to appellant with his son as surety thereon. While the note was executed on July 5, it was dated March 10 for the purpose of effecting an equitable adjustment of interest. In December, 1937, the partnership was terminated and appellee took one-third of the live stock and other partnership property from the premises, leaving, as he said, appellant's two-thirds share of the property on the place. This was done without appellant's consent but appellee claims he made a fair division of the property.

After appellee departed from the premises with what he claimed was his share of the partnership property, appellant instituted this action on the two promissory notes referred to. The large note was subject to credits of $455.35 and $15.77 and the small note subject to a credit of $38.24. Appellee pleaded that a mistake was made in the execution of the large note, in that the amount thereof should not have been more than $422.64; that nothing was owing at the time of the execution of the small note but that it was executed under the mistaken belief that he did owe appellant at that time. A reformation of the larger note was sought as well as a cancellation of the small one. Appellee pleaded that appellant was indebted to him in large sums and asked a settlement of the partnership affairs and judgment over against appellant for $1,157.70 on numerous claims asserted by him. Appellant during the course of the litigation made additional claims against appellee amounting to $1,083.39.

The claims made by appellee against appellant were as follows: $210.49 on a duebill executed by appellant

to appellee dated December 10, 1936, which appellee had in his possession; $200 on another duebill executed to him by appellant which had been lost; $128.33 for cattle sold by Decker and not accounted for and $232 for hogs sold and not accounted for; a small sum paid on the store account for Decker and $54.60 owing to him by appellant for labor; $300 for board furnished appellant for 15 months at $20 per month.

The chancellor sustained appellee's contention as to mistake in the execution of the two notes, reduced the large note to $422.64, and cancelled the small note. He then adjudged that the credits on the large note were sufficient to satisfy the amount it should have been executed for. He also adjudged that the partners had settled with each other from time to time and on each transaction as it took place and that the evidence of neither was sufficient to establish any of the other claims made by them against each other. He thereupon adjudged that neither partner was indebted to the other and dismissed the petition, adjudging that each partner pay his own costs. From the judgment of the chancellor the appellant prosecutes this appeal, contending that he was entitled to judgment for the full amount sued for, and appellee prosecutes a cross-appeal contending that he was entitled to judgment against appellant for $1,157.70.

Practically the only testimony of any value or materiality in the case was the testimony of the respective parties. Neither kept records from which anything can be determined with any degree of definiteness—appellee kept none at all. Appellant testified a second time without leave of court being obtained for the retaking of his deposition. This second deposition was incompetent for that reason and should not have been considered by the trial court. Civil Code of Practice, Section 553. However, this makes little difference as the testimony given in the second deposition was largely an elaboration of his former testimony.

The chancellor seemed to have reached his conclusion as to mistake in the execution of the two notes sued on by giving undue consideration and weight to the testimony of L. L. Wilson, cashier of the bank in Smithland. In December of 1937, the partners, in attempting

to effect a settlement between themselves, went to the bank and got Mr. Wilson to do some figuring for them. Very shortly after they started talking with him it became apparent to appellant that they would be unable to reach any agreement, and he left. Mr. Wilson then proceeded on the basis of figures furnished by appellee to make up a statement of accounts between the partners. It is apparent from Mr. Wilson's testimony that none of the information on which his figures were based was furnished by Decker, yet the chancellor accepted these figures just as made by Mr. Wilson and adjudged that a mistake had been made in the execution of the large note and that the small note would not have been executed had the mistake not been made as to the large note. At the time these figures were furnished to Mr. Wilson by appellee approximately two years had passed since the execution of the large note. The figures thus furnished, on which the judgment of the chancellor is largely based, were furnished from memory after this long lapse of time. Appellee did not profess to have any records substantiating his figures. It is thus apparent that there was no sound basis on which the judgment of the chancellor finding that a mistake had been made in the execution of the note could be based. The partners in the execution of this note had agreed on a settlement made between themselves at that time and executed the note in confirmation of that settlement. To reform the note, appellee had placed on him the burden of introducing clear, strong and convincing evidence to show that a mistake had been made. See Belknap et al. v. Bank of Prospect et al., 259 Ky. 385, 82 S. W. (2d) 504, and cases therein cited. This, we feel sure, he wholly failed to do. Not only did he not meet the burden of showing this fact by clear, strong and convincing evidence, but on the contrary it seems that the preponderance of the evidence favors appellant in showing that no mistake was made. Appellee says he thought after the note was executed there had been a mistake made. He took no steps to correct the mistake but permitted almost two years to run before questioning the correctness of the note. In the meantime on July 5, 1937, he executed the smaller note, which was in full settlement of affairs to that date—it was a ratification and confirmation of the correctness of the first note. A careful examination of the testimony convinces

us that a full, fair and complete settlement as to property was made between the partners in January, 1936, and this note executed pursuant thereto and that the chancellor was clearly in error in adjudging a reformation of the note on the unsatisfactory testimony of appellee unsupported by records of any kind.

In view of our conclusions reached as to this note, it also follows that the chancellor was in error in adjudging a cancellation of the smaller note. His action in doing so was based on the fact that a mistake had been made in the execution of the large note.

We are in accord with the chancellor's judgment denying each and all of the other claims of the respective parties against each other. The most that we can say on this point is that on some of the items a doubt is left in our minds and under these circumstances it is clearly our duty to follow the finding of the chancellor. Supporting the finding of the chancellor as to these items is the fact that on July 5, 1937, the partners met and had a settlement of all their affairs, pursuant to which the small note was executed. As that note was undoubtedly executed for a balance due on a complete settlement of the partnership affairs to that date, either party making a claim against the other on account of any matter arising prior to the execution of that note had the burden of producing clear, strong and convincing evidence to show that a mistake was made. This burden we think they both wholly failed to meet. We regard the execution of the small note on July 5 as a full, final and complete settlement of all the partnership affairs to that date and the chancellor should have so adjudged. This view is conclusive against appellee's right to recover on the duebill presented by him and on the other duebill which he claims to have lost. Appellant denied the execution of the second duebill and testified that the duebill in appellee's possession was taken into account in the settlement of July 5—we have little doubt that it was.

There is no satisfactory evidence that after July 5 appellant became indebted to appellee on account of any transaction. Most of appellee's evidence was directed to showing transactions prior to July 5, which we have held are concluded by the note executed that day.

We conclude that appellant was entitled to judgment for the full amount of the two notes sued on, subject to the appropriate credits.

Judgment reversed on the original appeal and affirmed on the cross-appeal, with direction to enter judgment in conformity with this opinion.